UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES ALVIN CUMMINGS, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-6129** |
| **DEPUTY MICAH BLANGE, DEPUTY GOINGS, ET AL** | **SECTION "A"(4)** |

## PARTIAL REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss (Rec. Doc. No. 51)** filed by the defendant Nurse Paula seeking dismissal of the claims against her pursuant to Fed. R. Civ. P. 12(b)(6). This motion, along with the entire matter, was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On October 6, 2009, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this motion can be disposed of without an evidentiary hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 12. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

## I. Factual Background

### A. The Complaint

The plaintiff, Charles Alvin Cummings, Jr. ("Cummings") is an inmate housed in the LaSalle Correctional Center in Olla, Louisiana. He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Jefferson Parish Sheriff's Deputies Micah Blange, Dodie Goins, Charles L. Buckelew, Jr., Bryan McLeod, Nicholas Breaux, Sergeant David R. Biewer, and Nurse Paula, seeking damages from the defendants for alleged violation of his constitutional rights while he was housed in the Jefferson Parish Community Correctional Center ("JPCCC").

Cummings alleges that Deputy Blange lied about him, which resulted in his being beaten by Deputy Blange and three other deputies, who he later identified as Breaux, Buckelew, and McLeod.[3] He claims that he was grabbed, kicked, and punched by the deputies. He further alleges that he asked Sergeant Pierce, who is not a defendant, and Nurse Paula to take pictures of his injuries, but they each declined.

Cummings seeks monetary compensation of $1.25 million, plus fees and costs, for mental anguish, deliberate indifference, malfeasance, and pain and suffering he experienced at the hands of the deputies. He further seeks an order to have the deputies suspended without pay for six months.

### B. The *Spears* Hearing

Cummings testified that, on June 12, 2009, he was in his cell at JPCCC waiting for roll call. The deputies called everyone to the cell bars and executed roll call. Deputy Blange got to his cell and looked at him in a strange and daring manner. Deputy Dodie Goins opened his cell and he

---

[3]*See* Rec. Doc. No. 29, Amended Complaint.

showed the deputy his arm band. Deputy Blange entered his cell to do his routine search. When he finished the inspection, he glared at Cummings again and told him "get back in your f***ing cell." Cummings testified that he laughed, and Deputy Blange just walked off. Cummings stated that he laughed again. Deputy Blange then turned around and came back to the cell with Deputies Breaux, McLeod, and Buckelew. Deputy Blange called out for Deputy Goins to open Cummings cell. He stepped in, grabbed Cummings, and threw him up against the wall. Cummings claimed that he was brushing his teeth by this time. The other deputies, Breaux, McLeod, and Buckelew, entered his cell to help Blange by hitting and kicking him when he fell to the floor. They pulled Cummings out from under the bed and kept kicking him. The deputies finally got him into cuffs and took him out of the cell. There was blood and toothpaste on the floor. While he was in the hallway, the deputies smashed his face against the wall. Cummings stated that he asked Deputy Biewer to take pictures of the cell and he declined. Cummings said that Biewer did nothing to stop the other deputies from beating him.

Cummings further stated that he was taken to the medical unit where he was seen by Nurse Paula. He claimed that he had scratches on his head, scrapes on his face and an abrasion on his knee. He stated that his mouth was bleeding, his right eye swollen, and his back was injured. He commented that if the guards had taken pictures of his cell, it would have shown the blood on the floor. He claimed that Nurse Paula marked down some of his injuries, but she was more concerned with the deputies. She witnessed him spit out toothpaste and blood into the trash can. She also checked his side and back.

Afterward, he was taken to the second floor holding area for a while before he was returned to his regular cell. At that time, he learned that he was being charged with indecent exposure and

two counts of resisting officers. He testified that the charges were later thrown out by Captain Olsen during the disciplinary hearing. He also claims that the deputies did the same thing to another inmate that same day, and that Deputy McLeod was eventually fired for injuring an inmate.

Cummings stated that he found out about the basis for the charges during the disciplinary proceedings. He stated that he woke up that morning and had to urinate for a long time. Apparently, Deputy Goins saw him urinate and turned around. When she turned back again, she saw Cummings shake his penis and stroke it, which he claims was a normal part of completing the urination process. She apparently called the deputies to have him charged with indecent exposure. He claims that is when they came back to his cell while he was brushing his teeth.

He stated that Deputy Goins was also the person who opened the cell to allow Blange and the other deputies to enter his cell without the presence of a ranking officer. This allowed them to beat him.

Cummings testified that he filed a grievance against the deputies that same day, but it was rejected due to the disciplinary charges against him. Although he knew they wrote him up, he did not receive the disciplinary charge for 15 days after the incident instead of within 72 hours.

He also stated that he sought medical care in July for his continuing back trouble caused by the attack. He stated that the medical unit sent him pain pills, but they did not examine him again or send him for the x-rays he wanted to take.

As a result of the foregoing, Cummings stated that he would like monetary compensation and to have each of the deputies suspended for six months without pay.

**II.     Standard of Review of Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (recognizing a change in the standard of review).  "Factual allegations must be enough to raise a right to relief above the speculative level on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555-56 (uppercase and parenthetical in original) (quotation marks, citations, and footnote omitted).  Plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim.  *Id*. at 556.  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id*. (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)).

In resolving the motion, the court is generally limited to considering only those allegations appearing on the face of the complaint.  However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pa. Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990).  "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim."  *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d

496, 498-99 (5th Cir. 2000)). While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

Further, the United States Fifth Circuit Court of Appeals has held that, when reviewing pro se complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint, and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In the prisoner context, in *Taylor v. Gibson*, 529 F.2d 709 (5th Cir.1976), the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Id*. at 713-14; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### III.  Analysis

In this case, Nurse Paula has filed the instant motion to dismiss the claims against her on the basis that Cummings has failed to identify a constitutional injury related to any individual action by her and has not pleaded a sufficient basis to hold her liable in her official capacity.

Under a broad reading of the complaint, the only reference to Nurse Paula is Cummings's contention that she declined to take pictures of his injuries after he was allegedly attacked by the deputy-defendants. No where in the complaint does Cummings allege that Nurse Paula denied him adequate medical care.

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under § 1983 pursuant to the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).

In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials and healthcare providers in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not

7

support an action under Section 1983." (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

The only allegation made in the complaint against Nurse Paula was that she denied Cummings's request to take photographs of his injury. However, this allegation does not approach a constitutional violation.

During the *Spears* Hearing, Cummings testified that Nurse Paula conducted an examination of him, although she did not seem to concerned about him as much as she was concerned about the deputies. He testified that he was provided medication for his back without having to submit to a full examination. He also complains that she never had his back x-rayed as he had requested.

However, his disagreement with her course of treatment, including the failure to take an x-ray the patient wanted, does not state a claim for Eighth Amendment indifference to medical needs. *Accord Mendoza*, 989 F.2d at 195. Even the delay in providing care, regardless of the length of the delay, requires the plaintiff to show a deliberate indifference to a serious medical need in order for it to rise to the level of a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294 (1991); *see also Estelle,* 429 U.S. at 104-05.

In this case, Cummings clearly indicates that Nurse Paula provided him with medical care. Although he was dissatisfied with the treatment, this is not enough to state a claim under the Eighth Amendment. *Norton*, 122 F.3d at 292 (affirming the dismissal of suit as frivolous where prisoner claimed medical personnel should have tried different methods.)

To the extent Cummings may have intended to name Nurse Paula in her official capacity, she seeks dismissal of any such claim on the basis that he has failed to articulate a basis for such liability. Specifically, in order to hold Nurse Paula liable in her official capacity, as an employee

of Jefferson Parish, he would have to establish an official policy or custom for which she was responsible and which resulted in the violative action.

Suit against Nurse Paula in her official capacity is suit against the entity she represents; in this case, that is Jefferson Parish. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Nurse Paula could be liable under § 1983 only if her actions were in execution of an unconstitutional parish policy or custom which inflicted injury or damage upon the plaintiff. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Cummings would have to allege not merely that such an unconstitutional policy or custom exists, but that it was the proximate cause of his injury or damage. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992); *Berry v. McLemore*, 670 F.2d 30, 33-34 (5th Cir. 1982), *overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).

Cummings, however, has not asserted that the treatment given him by Nurse Paula was the result of an unconstitutional policy or custom of Jefferson Parish as contemplated by *Monell*. Instead, his claims concern allegations of isolated actions in connection with his medical treatment after the incident with the deputies. Therefore, Cummings has failed to state a claim against Nurse Paula in her official capacity.

**IV. Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that the **Motion to Dismiss (Rec. Doc. No. 51)** filed by the defendant, Nurse Paula, pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED** and the § 1983 claims against her be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[4]

New Orleans, Louisiana, this 18th day of August, 2010.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.